By the Court.
 

 The question in issue here concerns only the refunding bonds which the commission has authorized. There is express statutory authority found in the provisions of Section 1084-15cs, General Code, to permit the issuance of the bonds, if the statute is valid. It is not alleged that these proposed bonds are in any way defective in form or substance.
 

 The first question concerns the right of the Secretary of State to raise the question of constitutionality of these statutes (Sections 1084-1 to 1084-17, General Code). Does he have such an interest in the execution of these bonds that he may contest their validity?
 

 Section 1084-10, General Code, requires the bonds to be signed by the Governor and the chairman of the commission, under the Great Seal of the state of Ohio, and attested by the Secretary of State. The word “attested” means, in its general sense, “witnessed” or “certified.” Used as it is in this section, it does not imply that his signature is in any way an act on behalf of the state, for which he may be liable. Rather, it is a certification of the signatures of the other two signers, and is clearly a ministerial action; and he clearly has no interest in this controversy. See 25 Ohio Jurisprudence, 986, Section 14. However, where a question of general public interest is raised, some courts have taken the view that an officer may make
 
 *337
 
 such a defense in a mandamus suit, even where there is some doubt that the respondent has any rights in the matter. See 30 A. L. R.,
 
 387;
 
 also 25 Ohio Jurisprudence, 986 and 987, Section 14. The Secretary of State -was allowed to raise a similar question in
 
 State, ex rel. Public Institutional Building Authority,
 
 v.
 
 Griffith,
 
 135 Ohio St., 604, 22 N. E. (2d), 200, and this court there passed on the constitutionality of the bonds.
 

 The second question presented is whether these refunding bonds are valid. In other words, are Sections 1084-1 to 1084-17, General Code, invalid and unconstitutional?
 

 It is the contention of the respondent that this act is unconstitutional in that it attemps to delegate legislative power, in violation of Section 1 of Article II of the Constitution. The respondent contends that the Legislature did not supply sufficient standards and effect sufficient limitations on the power of the commission, but rather left to them the determination of questions which require legislation on the part of the commission. The respondent points out that the bridges to be purchased are not designated by the Legislature, and that the price to be paid, the tolls to be charged, the amount and interest rate of the securities to be issued, and price at which they are to be sold, are left solely to the discretion of the commission, and therefore there is an unconstitutional delegation of legislative powers.
 

 An examination of the statutes shows that the act is not one entirely without standards. Although the Legislature has conferred upon the State Bridge Commission discretion as to when it shall acquire bridges, it has carefully guarded the exercise of that power by describing generally the bridges that may be purchased (Sections 1084-1, 1084-15&, General Code), by defining the term “cost of bridges,” as used in the act, as including “the cost price, cost of improvements,
 
 *338
 
 financing charges, interest during any period of disuse before completion of improvements, cost of traffic estimates and of engineering and legal expenses, plans, specifications and surveys, estimates of cost and of revenues, other expenses necessary or incident to determining the feasibility or practicability of the .enterprise, administrative expense and such other expenses as may be necessary or incident to the financing herein authorized and the acquisition of the bridge and the placing of the bridge in operation” (Section 1084-2, General Code), by providing in detail the procedure to be used in issuing bridge revenue bonds (Section 1084-10, General Code), providing the maximum interest to be paid, and the maximum term of the bonds' (Section 1084-10, General Code), and by fixing a formula to determine the rate of tolls to be charged (Section 1084-13, General Code).
 

 These statutes indicate a definite limitation established by the Legislature to control the powers of the commission. It is clear that every bridge is not of the same age, the same value or the same income possibilities, and any more stringent limitations would make the act unworkable; and since the state has the undoubted power to acquire bridges, it has also the power to delegate to a commission the administrative duty of determining their value and what would be a reasonable price to be paid for their purchase.
 

 The respondent contends that these refunding bonds pledge state property, and create a debt of the state in excess of the constitutional limitations. Not much weight can be given to the argument that the bridge will belong to the state absolutely when the original bonds are paid by the refunding bonds, and the refunding bonds will have a pledge of state revenues for their payment. The state has no claim on the revenues of this bridge until the bridge revenue bonds have been paid ■ (Section 1084-13, General Code), and Section 1084-15», General Code, again authorizes the revenues
 
 *339
 
 to be pledged for tbe payment of bridge revenue refunding bonds until they have been retired. In this case we do not have a combination of existing state buildings with improvements to be made thereon and tbe revenue from tbe joint property pledged to liquidate tbe cost of tbe improvement. There is no obligation whatever to pay these bonds except from bridge revenues. Tbis case clearly falls within tbe rule laid down in tbe case of
 
 Kasch
 
 v.
 
 Miller, Supt.,
 
 104 Ohio St., 281, 135 N. E., 813, and our conclusion is sustained by tbe first paragraph of tbe syllabus of
 
 State, ex rel. Public Institutional Building Authority,
 
 v.
 
 Griffith, supra,
 
 and tbe enabling statutes are clearly constitutional.
 

 Therefore, it is clear that no constitutional provisions are violated in tbe issuance of these refunding bonds, and tbe writ will be granted..
 

 Demurrer to petition overruled and writ allowed.
 

 Day, Zimmerman, Williams, Myers, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., dissents.