Turner, J.
 

 While appellant has argued a number of subsidiary questions, we conclude that there are five principal questions presented by the amended petition and the demurrer thereto,
 
 vis:
 

 (1) ' Is this an action against the state of Ohio?.
 

 (2) If this is not an action against the state, does
 
 *191
 
 the law specially enjoin upon respondent a duty to levy and assess personal property taxes on all (or any) of the personal property controlled and used by the Department of Liquor Control?
 

 (3) Is the gallonage tax provided for in Section 6064-10, General Code, and/or the markup provided for in Section 6064-3, paragraph 2, General Code, a lawful substitute for general property taxes on personal property held and used by the Department of Liquor Control?
 

 (4) Are either the due process or the equal protection clauses of the state or federal Constitution violated?
 

 (5) Does Section 5351, General Code, authorize immunity from taxation of
 
 personal property
 
 owned by the state?
 

 (1) Appellant (relator) complains that the Court of Appeals erred in holding that the state of Ohio is not a taxpayer within the purview of Section 5320, General Code, and “in failing to hold that the state of Ohio was subject to taxation insofar as the personal property used in business by the Department of Liquor Control was concerned and in failing, therefore, to overrule said demurrer of the respondent-appellee.”
 

 In his amended petition relator alleged “that said Department of Liquor Control is a separate body corporate * * * that the said Department of Liquor Control is engaged in the business of buying, selling and distributing spirituous liquor * * * throughout the state of Ohio * ® * that the Department of Liquor Control
 
 owns,
 
 operates, manages and controls personal property located and used in business in the.state of Ohio.” (Italics ours.)
 

 The foregoing allegations are incorrect conclusions of law. If they were to be considered as conclusions of fact, we may take judicial notice of their incorrectness
 
 *192
 
 as they are allegations respecting the nature and function of a department of state government. The Department of Liquor Control is an administrative department of the state of Ohio. (Section 154-3, Section 6064-3 and Section 6064-8, General Code,
 
 inter alia.}
 
 Such department is not a corporation of any kind.
 

 Section 1 of Article XIÍI of the Constitution provides that “The General Assembly shall pass no special act conferring corporate powers,” while Section 2 of that Article provides that “corporations may be formed under general laws.” We take judicial notice of the fact that the Department of Liquor Control has not been incorporated under general laws. In his reply brief relator admits: “We, of course, admit that there cannot be any special corporation acts today and that the creation of this department was properly made by virtue of the necessity of the regulation of the sale of spirituous liquors. * * *”
 

 Recognizing the weakness of his position in his amended petition, relator here claims (without further amendment) that the state of Ohio comes within the definition of a taxpayer under Section 5320 and elsewhere in the General Code. Relator also contends that the -state is “a
 
 person
 
 doing business in this state.” (Italics ours.) Contrary to the allegations of his amended petition relator now says in his brief: ‘ ‘ Certainly the state of Ohio owns certain personal property of the Department of Liquor Control * * However, relator shuttles back and forth on the question of the ownership of the property sought to be assessed.
 

 Unquestionably the personal property held and administered by the Department of Liquor Control belongs to the state of Ohio.
 

 Section 16 of Article I of the Constitution provides:
 

 “Suits may be brought against the state, in such courts and in such manner, as may be provided by law. ’ ’ This constitutional provision is not self-execut
 
 *193
 
 ing and has not been implemented by legislative action to cover such a case as we have here.
 

 In 37 Ohio Jurisprudence, 268, Section 44, it is said:
 

 “In accordance with the general rule that the state cannot be sued without its consent, suits against officers of the state, as representing the state in action and liability where the state, though not a party to the record, is the real party against which relief is sought and where a judgment for the plaintiff, though nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability, are treated as suits against the state. ’ ’
 

 In.59 Corpus Juris, 313, Section'468, it is said:
 

 “A suit, involving property in which the state has an undoubted right or interest, and in which no effective decree can be rendered without binding the state itself, is a suit against the state and cannot be maintained without its consent. * * * ”
 

 In 49 American Jurisprudence, 304, Section 92, it is said:
 

 ‘ ‘ While a suit against state officials is not necessarily a suit against the state, within the rule of immunity of the state from suit without its consent, that rule cannot be evaded by bringing an action nominally against a state officer- or a state board, commission, or department in his or its official capacity when the real claim is against the state itself, and the state is the party vitally interested. If the rights of the state would be directly and adversely affected by the judgment or decree sought, the state is a necessary party defendant, and if it cannot be .made a party, that is, if it has not consented to be sued, the suit is not maintainable. The state’s immunity from suit without its consent is absolute and unqualified, and a constitutional provision securing it is not to be so construed as to place the state within the reach of the process of the court.”
 

 
 *194
 
 In 34 American Jurisprudence, 905, Section 123, it is said:
 

 “The immunity of a state and of the United States from suit prevents mandamus against a public officer, board, or commission where it is in reality a proceeding against either sovereign. * * *”
 

 In the case of
 
 Palmer
 
 v.
 
 State of
 
 Ohio, 248 U. S., 32, 63 L. Ed., 108, 39 S. Ct., 16, it was held as shown by the headnotes to the official report:
 

 “The right of individuals to sue a state depends entirely on the consent of that state.
 

 “Whether an-amendment of the Ohio Constitution (Article I, Section 16, as amended 1912) gives such consent directly or requires legislation to put it into effect,
 
 held
 
 a question of. local law, in no sense involving rights under the due process clause of the Fourteenth Amendment of individuals suing the state for damage to property.
 

 “The Fifth Amendment relates to federal action only. ’ ’
 

 The foregoing case grew out of the case of
 
 Palmer
 
 v. State, 96 Ohio St., 513, 118 N. E., 102, in which it was held:
 

 “ 1. A state is not subject to. suit in its own courts without its express consent.
 

 “2. The provision of the Ohio Constitution, Article I, Section 16, as amended September 3, 1912, that * Suits may be brought against the state, in such courts and in such manner, as may be provided by law,’ is not self-executing; and statutory authority is required as a prerequisite to the bringing of suits against the state. ’ ’
 

 Correctly construed, we have in the instant case an action whereby it is sought to compel an officer of the state to start in motion the machinery whereby the state is compelled to pay to its subdivisions a tax on its own property or suffer distress of such property.
 

 
 *195
 
 Being of the opinion that the present action is against the state, the judgment of the Court of Appeals sustaining the demurrer to relator’s amended petition should be sustained, unless we find that the General Assembly has by law imposed a duty upon respondent pertinent to the allegations of the amended petition which duty respondent has failed to perform.
 

 (2) We do not mean to be understood as holding that the General Assembly may not by appropriate legislation subject the state’s property used by the Department of Liquor Control to the general personal property tax laws. But we do mean to say that up to this time the legislative authority has not done so. In no one of the statutes cited by relator (or in any which we have been able to find on the subject) is the state or Department of Liquor Control mentioned specifically or by necessary implication.
 

 Assuming that the allegations of the amended petition are broad enough to include the state of Ohio as owner of the personal property in question, we call attention to a well settled doctrine in this state (and elsewhere) as set forth in paragraph three of the syllabus in
 
 State, ex rel. Parrott,
 
 v.
 
 Board of Public Works,
 
 36 Ohio St., 409:
 

 “The state is not bound by the terms of a general statute, unless it be so expressly enacted.” (Cited with approval in
 
 State, ex rel. Attorney General,
 
 v.
 
 Cincinnati Central Ry. Co.,
 
 37 Ohio St., 157, 176;
 
 State, ex rel. Ogelvee, Aud.,
 
 v.
 
 Cappeller,
 
 39 Ohio St., 207;
 
 State, ex rel. Janes,
 
 v.
 
 Brown, Secy. of State,
 
 112 Ohio St., 590, 148 N. E., 95; and
 
 State, ex rel. Nixon,
 
 v.
 
 Merrell, Dir. of Highways,
 
 126 Ohio St., 239, 246, 185 N. E., 56.)
 

 In the ease of
 
 Van Brocklin
 
 v.
 
 State of Tennessee,
 
 117 U. S., 151, 29 L. Ed., 845, 6 S. Ct., 670, Mr. Justice Gray said at pages 173, 174: “General tax acts of a
 
 *196
 
 state are never, without the clearest words, held to include its own property, or that of its municipal corporations, although not in terms exempted from taxation.” The first case cited by Mr. Justice Gray in support of the foregoing statement is that of
 
 Lessee of Buckley
 
 v.
 
 Osburn,
 
 8 Ohio, 180, wherein Judge Hitchcock said at page 187:
 

 ‘ ‘ The land in controversy was not the property of an individual, but was the property of the state of Ohio, and it cannot be supposed it was the intention of the state to levy a tax upon its own lands.” .
 

 Even without benefit of the rule of strict construction which applies to the interpretation and application of tax statutes, we are of the opinion that there is no justification for holding that the state of Ohio is to be considered as a taxpayer or person doing business within this state. Before a writ of mandamus may issue relator must show a clear right thereto. See 25 Ohio Jurisprudence, 997, Section 23, and cases there cited.
 

 Section 12283, General Code, provides:
 

 “Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.”
 

 In the case of
 
 State, ex rel. Stanley,
 
 v.
 
 Cook, Supt. of Banks,
 
 146 Ohio St., 348, 66 N. E. (2d), 207, it was held in paragraph seven of the syllabus:
 

 “ A
 
 writ of mandamus will not issue to compel the observance of law generally, but will be confined to commanding the performance of specific acts specially enjoined by law to be performed.
 
 (Cullen, Vice Mayor,
 
 v.
 
 State; ex rel. City of Toledo,
 
 105 Ohio St., 545;
 
 State, ex rel. Kunick,
 
 v.
 
 Urner, Aud.,
 
 135 Ohio St;, 9;
 
 State, ex rel. Foster,
 
 v.
 
 Miller et al., Tax Comm.,
 
 136 Ohio St.,
 
 *197
 
 295;
 
 State, ex rel. White,
 
 v.
 
 City of Cleveland,
 
 132 Ohio St., 111;
 
 State, ex rel. City Loan & Savings Co. of Wapakoneta, v. Taggart, Recr.,
 
 133 Ohio St., 382; and
 
 State, ex rel. Welsh,
 
 v.
 
 State Medical Board,
 
 145 Ohio St., 74, approved and followed.)”
 

 As there is no duty specially enjoined upon respondent to comply with the writ of mandamus prayed for by relator in his amended petition, the judgment of the Court of Appeals should be affirmed.
 

 (3) There is a further reason for affirming the judgment of the Court of Appeals. The property which relator claims is used in business is already taxed. The respondent has nothing to do with the levy, assessment or collection of these taxes. •
 

 Section 4 of Article XII of the Constitution' provides :
 

 “The General Assembly shall provide for raising revenue, sufficient to defray the expenses of the state, for each year, and also a sufficient sum to pay the interest on the state debt. ’ ’
 

 Section 6064-10, General Code, provides in part:
 

 “* * *
 
 In any event
 
 (a) a sum equal to one dollar for each gallon of spirituous liquor sold by the department during the period covered by the payment shall be paid into the state treasury to the credit of the general revenue fund in the manner provided by
 
 law;
 

 “Whenever, in the judgment of the director of finance, the amount in the custody of the treasurer of state to the credit of the liquor control rotary fund is in excess of that needed to meet the maturing obligations of the department and as working capital for its further operations, the director of finance shall certify the amount of such excess to the department of liquor control and to the auditor of state, and the auditor of state shall thereupon issue an order on the treasurer
 
 *198
 
 of state as custodian of moneys collected under the liquor' control act for the amount thereby determined, to the general revenue fund of the state and a pay-in order in like amount, in the manner provided by law. ’ ’ (Italics ours.)
 

 In Section 6064-3, General Code, paragraph (2), provision is made for a markup on sales. The proceeds of the markups go to the treasurer of state as custodian (Section 6064-9, General Code) and thence under Section 6064-10, General Code, the excess not needed is to 'be paid into the general fund of the state.
 

 The Department of Liquor Control is permitted to. sell spirituous liquors only (Section 6064-12, General Code).
 

 (4) Appellant presents the following argument: “If this proprietary function of the state of Ohio is permitted to avoid its just share of the expense of running the government of the state of Ohio, an undue burden is thrown on the general taxpayer. ’ ’
 

 In the case of
 
 Carmichael, Atty. Genl. of Alabama,
 
 v.
 
 Southern Coal & Coke Co.,
 
 301 U. S., 495, 509, 81 L. Ed., 1245, 57 S. Ct., 868, 109 A. L. R., 1327, Mr. Justice Stone said:
 

 “It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citing cases.] This court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citing cases.] ”
 

 We are of the opinion that the foregoing revenue legislation meets the test laid down by Mr. Justice Sutherland in
 
 Colgate
 
 v.
 
 Harvey, Tax Commr.,
 
 296 U. S., 404, 422, 80 L. Ed., 299, 56 S. Ct., 252, 102 A. L. R., 54, as follows:
 

 
 *199
 
 “It is settled beyond the admissibility of further inquiry that the equal protection clause of the Fourteenth Amendment does not preclude the states from resorting to classification for the purposes of legislation. s * *
 

 “But the classification ‘must be reasonable, hot arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. * * * The test to be applied in such cases as the present one is — does the statute arbitrarily and without genuine reason impose a burden upon one group of taxpayers from which it exempts another group, both of them occupying substantially the same relation toward the subject matter of the legislation?”
 

 In the case of
 
 State, ex rel. Struble,
 
 v.
 
 Davis et al., Tax Comm.,
 
 132 Ohio St., 555, 9 N. E. (2d), 684, it was held:
 

 “1. Section 2 of Article XII of the state Constitution requires only lands and improvements thereon to be taxed by uniform rule according to value. By reason of the removal of previous constitutional limitations and restrictions, the power of the General Assembly to determine the subjects and methods of taxation and exemption of personal property therefrom is limited only by Article I of the Constitution of the state.
 

 “2. In the matter of classification of property for taxation purposes, broad power is conferred upon the Legislature. Its action in that regard will not be set aside by the courts unless the classification attempted results in such discrimination against members of the same class as to deny them the equal protection of the law.” See, also, 61 Corpus Juris, 384, Section 383.
 

 In the case of
 
 Zangerle, Aud.,
 
 v.
 
 Republic Steel
 
 
 *200
 

 Corp.,
 
 144 Ohio St., 529, 60 N. E. (2d), 170, it was held in paragraph one of the syllabus:
 

 “Section 2 of Article XII of the state Constitution requires only lands and improvements thereon to be taxed by uniform rule according to value. By reason of the removal of previous constitutional limitations and restrictions, the power of the General Assembly to determine the subjects and methods of taxation and exemption of personal property therefrom is limited only by Article I of the Constitution of the state.
 
 State, ex rel. Struble,
 
 v.
 
 Davis et al., Tax Comm.,
 
 132 Ohio St., 555, approved and followed.)”
 

 (5) Section 5351, General Code, provides in part: “Real or
 
 personal property
 
 belonging exclusively to the state or United States, and public property used fór a public purpose, shall be exempt from taxation. * * *” (Italics ours.)
 

 Relator claims that this statute is not applicable because it was adopted prior to the amendment of Section 2 of Article XII of the Constitution permitting classification and exemption from taxation of
 
 personal property.
 
 In such claim relator is mistaken as the amendment of Section 2 of Article XII of the Constitution became effective January 1, 1934 (see schedule and 115 Ohio .Laws, pt, 2, 446), while Section 5351, General Code, was amended and the part above quoted readopted (120 Ohio Laws, 407) and became effective September 3, 1943. The reference to the syllabi of
 
 State, ex rel. Struble,
 
 v.
 
 Davis, supra,
 
 and
 
 Zangerle, Aud.,
 
 v.
 
 Republic Steel Corp., supra,
 
 is appropriate here. Paragraph five of the syllabus of
 
 Federal Public Housing Authority v. Guckenberger, Aud.,
 
 143 Ohio St., 251, 55 N. E. (2d), 265, is applicable only to real property which was all that was involved there. Paragraph seven of the syllabus in
 
 Zangerle, Aud.,
 
 v.
 
 City of Cleveland,
 
 145 Ohio St., 347, 61 N. E. (2d), 720, re
 
 *201
 
 fers only to
 
 municipally owned
 
 personal property.
 

 In relator’s reply brief it is said: “It should be remembered that the relator does not question the general power of the Legislature to exempt personal property from taxation subject to the provisions of Article I of the Constitution.” As already pointed out, relator was mistaken in assuming that Section 5351, General Code, was inapplicable because enacted prior to the constitutional amendment.
 

 In 51 American Jurisprudence, 550, Section 557, it is said:
 

 “When public property is involved, exemption is the rule and taxation the exception. Public property is presumed to be exempt from the operation of general property tax laws. Tax statutes are construed not to embrace property of the government or its instrumentalities unless the legislative intention to in•clude such property is plainly arid clearly expressed.”
 

 We are of the opinion that the personal property here in question is exempt from taxation under Section 5351,
 
 supra,
 
 and that such exemption does not violate any provision of Article I of the Constitution, at least so long as the gallonage tax under Section 6064-10, General Code, is in effect.
 

 Relator (appellant here) relies strongly on the case of
 
 State of Ohio
 
 v.
 
 Helvering, Commr. of Int. Rev.,
 
 292 U. S., 360, 78 L. Ed., 1307, 54 S. Ct., 725, where the state of Ohio sought to enjoin the Commissioner of Internal Revenue and the various collectors throughout the state from collecting taxes imposed by Section 3244, Revised Statutes of the United States (Title 26, Section 205, U. S. Code) and other United States statutes. In the course of the opinion it was said by Mr. Justice Sutherland (p. 370): “Whether the word ‘person’ or ‘corporation’ includes a state or the United States depends upon the connection in which the word
 
 *202
 
 is found.” The court held that under Title 26, Section 205, the state was included within the meaning of the word “.person.” This certainly is no precedent for saying that the word “person” or “corporation” as used in the Ohio tax statutes pertaining to personal property includes the state of Ohio. We hold that it does not.
 

 In the case of
 
 C. A. King & Co.
 
 v.
 
 Horton,
 
 116 Ohio St., 205, 156 N. E., 124, it was held in paragraph three of the syllabus:
 

 “The ‘police power’ is the power to guard the public morals, safety, and health, and to promote the public convenience and the common good, and is one of the powers not surrendered to the federal government, and therefore remains with the states respectively. It is within the power of the state to devise the means to be employed to those ends so long as they do not go beyond the necessities of the case and have a real and substantial relation to the object to be accomplished.”
 

 A writ of error was dismissed by the Supreme Court of the United States, 276 U. S., 600, 72 L. Ed., 725, 48 S. Ct., 322.
 

 In coming to the conclusion, as we do, that the Liquor Control Act does not go beyond the necessities of regulation of the traffic and does have a real and substantial relation to the object to be accomplished, we have in mind not only the enactment and repeal of the 18th Amendment to the federal Constitution but our own former state constitutional provision and legislative enactments in attempts to control the evils growing out of such traffic. The fact, if fact it be, that the Liquor Control Act is no more successful than the 18th Amendment or our own constitutional and statutory provisions, does not authorize this court to add to the taxation provisions adopted by the General Assembly in response to the proclamation of the Governor con-
 
 *203
 
 veiling that legislative body for the specific purpose,
 
 inter
 
 alia, of taxing the manufacture, possession and use of and traffic in spirituous liquors.
 

 Too much emphasis has been placed upon the claimed distinction between the governmental and proprietary functions of state government. No such distinction in respect of federal agencies is recognized by the federal courts. Through various corporations and agencies the federal government is in the market place. An examination of the acts of Congress creating various federal agencies, a long list of which may be found in the congressional directory index of federal agencies, will disclose that the federal government is extensively engaged in commercial transactions in competition with private enterprise.
 

 We have no quarrel with the holdings of the federal courts in respect of such agencies, but we are unable to see the distinction made as to similar state agencies.
 

 When the 18th Amendment of the federal Constitution and our so-called prohibition amendment to the state Constitution were repealed, the state of Ohio was faced with an emergency that called for the exercise of its police power. Under such emergency the Governor of Ohio called a special session of the 90th General Assembly. The proclamation therefor reads:
 

 “Under authority granted by Article III, Section 8, of the Constitution of the state of Ohio, the governor thereof is authorized in such cases of emergency, of which he is the judge, to call the general assembly of the state of Ohio into special session.
 

 “In my judgment, as governor of the state, an emergency has arisen wherein the voters by an overwhelming plurality, chose that our state should, in cooperation with the repeal of the 18th amendment to the federal constitution and the repeal of the so-called prohibition amendment to the constitution of Ohio,
 
 *204
 
 adopt a proper form of taxation and control of the traffic in alcoholic beverages in the state of Ohio.
 

 “Having, therefore, in mind the expression of the will of the people of our state, it becomes my duty to summon into special session the general assembly of Ohio.
 

 “Now, therefore, I, George White, governor of Ohio, by virtue of the authority vested in me, hereby order that the general assembly of thé state of Ohio convene in extraordinary session at the capitol in the city of Columbus at one o’clock p. m., Wednesday, December 6th, 1933, then and there to give consideration to legislation affecting the following matters and none others to wit:
 

 “The consideration, and passage of such legislation as may be deemed proper to tax, regulate and control within the state of Ohio, the manufacture, possession, use and traffic in, malt, spirituous and vinous liquors within the state of Ohio.” See 115 Ohio Laws, pt. 2, 107.
 

 As a result of such proclamation the General Assembly enacted House Bill No. 1 entitled “An act to provide a system of control of the manufacture and importation of and traffic in beer and intoxicating liquors in this state, including a state monopoly of the distribution and sale of spirituous liquor; for that purpose to create the department of liquor control, to consist of the board of liquor control and the director of liquor control and define their respective powers and duties; to levy a tax on the sale of wine and spirituous liquor and a gross excess profits tax on the manufacture and sale of spirituous liquor, for the use of the general revenue fund of the state; * * * and to declare an emergency.” See 115 Ohio Laws, pt. 2, 118.
 

 Whether the Liquor Control Act (House Bill No. 1, 115 Ohio Laws, pt. 2, 118, and its amendments) pre^
 
 *205
 
 scribed a wise plan is not for the courts to decide. So long as an act of the General Assembly is constitutional the question of policy is solely for the legislative branch of our state government to determine. Such act does provide the General Assembly’s plan for the lawful taxation, regulation and control of the liquor traffic.
 

 We do not question the power of the federal government to levy and collect the excise taxes, the collection of which was contested in the case of
 
 State of Ohio
 
 v.
 
 Helvering, supra.
 

 Therefore, the judgment of the Court of Appeals should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Matthias, Zimmerman and Sohngen, JJ., concur.
 

 Weygandt, C. J., Hart and Stewart, JJ., dissent.